AO 106 (Rev. 6/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
## DISTRICT OF SOUTH CAROLINA

In the Matter of the Search of Property located at    )
103 Lakeland Drive Spartanburg, South Carolina, 29306   )   Case No. 7:19-cr-250-JDA
more fully described below    )

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

The premises to be searched is described as follows: the TARGET LOCATION is a single family dwelling, single level structure located at 103 Lakeland Drive Spartanburg, South Carolina. The TARGET LOCATION is composed of vinyl siding and brick. The roof is pitched, with brown shingles. The TARGET LOCATION rests on the corner of Lakeland Drive and Old Canaan Road Spartanburg, SC. As one faces the TARGET LOCATION from the street, there are six windows each flanked by dark colored faux shutters. The front door of the residence appears to open inward and is located directly above a brick stairway which leads to the residence front porch. Additionally, there are two white columns on the covered front porch of the TARGET LOCATION. A photograph of the TARGET LOCATION is provided in conjunction with the Affidavit in Support of this Application as "Attachment A." Also to be searched are all sheds, outbuildings, appurtenances, and vehicles (associated with the occupants of THE PREMISES TO BE SEARCHED) located on the property, as well as the electronic contents of wireless telephones, computers, or other digital storage or media located at the premises, or within any sheds, outbuildings, appurtenances, and vehicles located on the property. Probable cause has been established that on the premises to be searched, there is now concealed: (1) controlled substances and drug paraphernalia; (2) currency, financial instruments, precious metals, jewelry, and other items of value, which are the fruits of drug trafficking; (3) firearms and other weapons; (4) records of drug transactions, including notes, ledgers, receipts, e-mails, computer files, photographs, video tapes, telephone records, calling cards, and correspondence which contain information on current and past associates, and may used to identify co-conspirators who have not yet been fully identified or located; (5) fictitious identification and other documents which are intended to conceal identity and avoid detection by law enforcement, including fictitious driver's licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance; (6) currently and/or previously used cellular telephones and electronic communications devices, including the electronic contents of those devices (i.e. electronic telephone directories, photographs, text messages, etc.); (7) books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of narcotics and/or money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; band, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and information returns filed or required to be filed.

The basis for the search under Fed.R.Crim.P. 41(c) is *(check one or more)*:
**X** evidence of a crime;
**X** contraband, fruits of crime, or other items illegally possessed;
**X** property designed for use, intended for use, or used in committing a crime;
_ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Possess with Intent to Distribute Methamphetamine and Cocaine |

The application is based on these facts:
    **XX** Continued on the attached sheet.
    ____ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Matthew W. McDonald, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _March 8, 2019_____

_____
*Judge's signature*

City and State: Greenville, South Carolina_____

Jacquelyn D. Austin, United States Magistrate Judge_____
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

IN THE MATTER OF THE APPLICATION    )      CASE NO.: 7:19-cr-250
OF THE UNITED STATES OF AMERICA    )
FOR AN ORDER AUTHORIZING A        )
SEARCH WARRANT FOR THE RESIDENCE    )
LOCATED AT 103 LAKELAND DRIVE,      )
SPARTANBURG, SOUTH CAROLINA      )

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Task Force Officer (TFO) Matthew W. McDonald, Drug Enforcement Administration (DEA), being duly sworn, depose and state the following:

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 21, United States Code, Section 878. I have been employed as a deputy with the Anderson County Sheriff's Office (ACSO) in Anderson, SC since 2009. Since 2013, I have fulfilled the duties of a detective, assigned to the ACSO Narcotics Unit. In January of 2017, I was assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO). Prior to my service in law enforcement, I was a member of the United States Air Force, and worked for nine years as a military police officer. During my time as a drug investigator, I have written numerous search warrants and arrest warrants, purchased narcotics while working in an undercover capacity, and frequently utilized the services of informants, and other confidential sources of information. I have served as the lead case agent in numerous narcotics investigations, at both the state and federal level. I am familiar with the terminology and distribution methods used by drug traffickers, as well as the methods of packaging, transporting, and ingesting numerous types of controlled substances. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. In addition, I have completed nine weeks of initial police training,

and undercover narcotics training at the South Carolina Criminal Justice Academy, in Columbia, South Carolina. In August of 2017 I completed DEA's Task Force Officer training in Atlanta, Georgia. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers.

## PREMISES TO BE SEARCHED

1. This affidavit is being submitted in support of an application for a search warrant at **103 Lakeland Drive Spartanburg, South Carolina** (hereinafter referred to as the PREMISES TO BE SEARCHED, or TARGET LOCATION). The TARGET LOCATION is more fully described as follows:

2. The TARGET LOCATION is a single family dwelling, single level structure located at 103 Lakeland Drive Spartanburg, South Carolina. The TARGET LOCATION is composed of vinyl siding and brick. The roof is pitched, with brown shingles. The TARGET LOCATION rests on the corner of Lakeland Drive and Old Canaan Road Spartanburg, SC. As one faces the TARGET LOCATION from the street, there are six windows each flanked by dark colored faux shutters. The front door of the residence appears to open inward and is located directly above a brick stairway which leads to the residence front porch. Additionally, there are two white columns on the covered front porch of the TARGET LOCATION. A photograph of the TARGET LOCATION is provided in conjunction with this affidavit, and incorporated as "Attachment A."

3. Also to be searched are all sheds, outbuildings, appurtenances, and vehicles located at the TARGET LOCATION, as well as the electronic contents of any computers, removable media (including thumb drives, removable hard drives, compact discs, or any other device which can maintain digital/electronic data), digital video recorders or hard drives, wireless telephones, or other telecommunications devices located at the premises, or within any sheds, outbuildings, appurtenances, and vehicles located on the property .

4. Based upon my training and experience as a narcotics agent, I know the following:

a. Drug traffickers regularly obtain and utilize multiple locations (i.e. houses and apartments) so as to allow them to have more than one place to store contraband and/or conduct drug-related business.

b. Drug traffickers frequently store controlled substances and drug paraphernalia for packaging, diluting, weighing and/or distributing controlled substances in, on, and around residence and/or business, and within vehicles and/or structures located on their property or its surrounding curtilage in an effort to avoid detection by law enforcement.  This paraphernalia often includes but is not limited to:  scales, plastic bags, diluting agents, etc.

c. Drug traffickers frequently store currency, financial instruments, precious metals, jewelry, and other items of value, which are the proceeds of drug transactions inside, on, and around their residence and/or place of business.

d. Drug traffickers frequently have in their possession, whether on their person, inside their vehicle, or in, on, or around their residence, firearms and other weapons. These firearms and weapons are commonly used by drug traffickers to protect their property, including, but not limited to: controlled substances; drug proceeds in the form of currency, jewelry and other real property; and other items of value whose existence may be considered illegal.

e. Drug traffickers frequently maintain in their residence and/or business, records of drug transactions, including notes, ledgers, receipts, computer files, photographs, video tapes, digital video recorders and associated hard drives memorializing footage  generated by closed circuit or internet-based video camera systems, telephone records, calling cards, and correspondence which contain information on current and past associates, and may be used to identify co-conspirators who have not been identified or located.

f. Drug traffickers frequently maintain fictitious identification and other documents which are intended to conceal their identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance.

g. Drug traffickers frequently maintain in their residence currently and previously used wireless telephones and/or electronic communications devices, particularly those wireless telephones and/or electronic communications devices which require the telephone and/or electronic communications device to be purchased. Drug traffickers frequently store digital and voice messages and phone numbers, belonging to drug purchasers, and other drug traffickers.

h. Drug traffickers regularly use computers in furtherance of drug trafficking and money laundering crimes, by maintaining illegal records and ledgers on the hard drives (or associated removable media) of said computers. Drug traffickers and money launders also regularly use computers to communicate with one another by way of e-mail, or other telecommunications devices using voice over internet protocol (VOIP), which work in conjunction with computers.

i. Drug traffickers and money launderers maintain books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of their narcotics and money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; bank, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and informational returns filed or required to be filed.

## FACTS SUPPORTING PROBABLE CAUSE

## BACKGROUND INVESTIGATION

## INFORMATION PROVIDED BY CS-1 IN JANUARY OF 2019

5. Beginning in January of 2019, a confidential source (hereinafter CS-1, or he/she) began providing information to the DEA about a group of unidentified individuals whom he/she had been put in contact with, who were attempting to purchase large quantities of cocaine and methamphetamine.[1] CS-1 had initially been put in contact with a trafficker "Frito" LNU) in Charlotte, North Carolina, who was acting as an intermediary for another individual (UM-1). After attempting to consummate a multi-kilogram drug transaction on more than one occasion, "Frito" LNU was unable to successfully broker the deal, and eventually made a telephonic introduction of CS-1 to UM-1, who then started dealing directly with one another via telephone.

6. During multiple conversations on the telephone, CS-1 learned that UM-1 was currently incarcerated, and had another subject (subsequently identified as Jermany SULLIVAN, hereinafter referred to as "SULLIVAN") who was acting as UM-1's representative on the outside.[2] Over the course of his communications with CS-1, UM-1 referred to SULLIVAN as his brother or cousin. In the course of their communications, UM-1 and CS-1 agreed to consummate a transaction wherein CS-1 would furnish ten kilograms of cocaine at $29,000 per kilogram, and ten kilograms of methamphetamine at $5,000 per kilogram, and then provide UM-1 and additional five kilograms of cocaine and five kilograms of methamphetamine on consignment. UM-1 agreed to send his representative (later

---

[1] CS-1 has a limited criminal history, and a review of that history shows no apparent felony convictions. CS-1 is currently working with the DEA in hope of financial reward, however, no promise has been made to CS-1 regarding any such reward. CS-1 has been working with the DEA for an extended period of time, and has repeatedly shown himself/herself to be reliable. CS-1's information has been corroborated on many occasions, through means including but not limited to recorded telephone calls and physical surveillance. Information provided by CS-1 has resulted in numerous seizures of both illegal drugs and drug proceeds, as well as the arrests of multiple individuals.

[2] SULLIVAN is a drug trafficker who is well known to drug investigators in the Upstate area of South Carolina, has been the target of previous DEA investigations, and has been convicted of felony drug crimes in the past.

5

identified as SULLIVAN) to consummate the transaction with CS-1 in Charlotte, North Carolina on January 30, 2019. The communications in question involved both UM-1 (using a contraband cellphone bearing associated telephone number (864) 867-9718, hereinafter TT#1), and a subject believed to be SULLIVAN, using a cellphone bearing associated telephone number (864) 526-9024 (hereinafter TT#2).[3,4]

7. Over the course of negotiations with UM-1, and during a conversation between UM-1 and CS-1 on January 24, 2019, CS-1 suggested to UM-1 that UM-1 should send a photograph of the money needed to purchase the drugs which had been negotiated for purchase, so that CS-1 could know that UM-1 was in fact legitimate. UM-1 explained that this would not be a problem, and the two continued to talk for about ten minutes. At about 7:08 pm (only a few minutes after the CS's request for photographs of money) the UM sent several picture text messages to the CS from (864) 867-9718. The messages contained pictures of a large amount of U.S. Currency laid out in several bundles on top of a dark kitchen counter and a black and stainless steel stove. There was also a photograph of several brick-shaped packages, which resemble kilograms of cocaine.[5]

## SEIZURE OF $40,000 AND IDENTIFICATION OF JERMANY SULLIVAN ON JANUARY 30, 2019

8. On January 30, 2019, using TT#1 and TT#2, UM-1 and SULLIVAN coordinated via telephone with CS-1 to carry out the referenced drug transaction. As it relates specifically to TT#2, SULLIVAN and CS-1 engaged in several conversations over TT#2 wherein the two discussed where the transaction would take place, and wherein CS-1 explained to

---

[3] Both TT#1 and TT#2 are telephones operating under pre-paid accounts. Subpoenaed information has established that neither phone bears any substantive subscriber information.

[4] All communications wherein either UM-1 and/or SULLIVAN spoke or texted with CS-1 were recorded, and are available for review.

[5] In his conversations with CS-1, UM-1 boasted that he already had a large quantity of drugs on hand, and was still working on selling them.

SULLIVAN that SULLIVAN would have the opportunity to check all of the drugs which SULLIVAN would be purchasing once the two met together. Eventually, SULLIVAN (driving a white Nissan Maxima, in which he was the sole occupant) was stopped by marked North Carolina State Police units on Interstate 85 near Exit 14.[6]  A roadside investigation led to the discovery of $40,000, inside of a black backpack located in the Maxima.  The money was seized, and SULLIVAN was released.  Shortly after the seizure, UM-1 called CS-1 and told CS-1 what had happened.

## CURRENT INVESTIGATION

9. On February 4, 2019, U.S. Magistrate Court Judge Jacquelyn D. Austin authorized a warrant allowing for the installation and use of a tracking device on the referenced Nissan Maxima driven by SULLIVAN during the aforementioned money seizure.  The device was installed by agents on February 5, 2019.  Since the device was installed, agents have determined that it is regularly driven by SULLIVAN, but that SULLIVAN does not live at the address on his South Carolina Driver's license.  Location data relative to the Maxima (supplemented by physical surveillance, wherein SULLIVAN has been seen regularly operating the vehicle) has established that almost without exception, the vehicle stays overnight at 200 Baldwin Circle, Mauldin, South Carolina. In addition, location data revealed that on February 13, 2019 SULLIVAN did visit 103 Lakeland Drive, Spartanburg, SC (TARGET LOCATION).

10. After agents received the location data relative to the TARGET LOCATION.  Agents checked the address through public Spartanburg, SC county Assessor's Office records, and those records indicated that SULLIVAN is the registered owner of the TARGET LOCATION.

---

[6] The Maxima which SULLIVAN was driving is registered to Sharika SULLIVAN (hereinafter S. SULLIVAN), whose relationship to Jermany SULLIVAN has yet to be conclusively determined.  The Maxima's registration lists SULLIVAN's address as 25 Fleetwood Drive #E-102, Greenville, South Carolina.  At no time since agents have been tracking the vehicle, has it spent any significant amount of time at the referenced address.  I know through training and experience that in an effort to avoid detection by law enforcement, drug traffickers regularly incorporate nominees for things which they buy and own (including but not limited to cars, houses, etc.), as part of the money laundering process.

**RECENT ACTIVITY**

11. During the course of this investigation, agents discovered probable cause to search 200 Baldwin Circle, Mauldin, SC and obtained a search warrant through United States Magistrate Judge Kevin F. McDonald. On March 7, 2019 Agents executed the referenced warrant. The execution of this warrant yielded the seizure of several pounds of marijuana, a large amount of U.S. currency not yet determined, more than two pounds of heroin, in excess of 65 pounds of cocaine, as well as several other items of evidentiary value to the investigation. A Jaguar sedan was seized from this residence which contained the majority of the seized narcotics. A bag located in the trunk of this Jaguar contained a portion of these narcotics which were packaged in a manner which suggested the narcotics were prepared for distribution. Also inside of this bag agents located three pieces of previously delivered U.S. mail. The referenced mail was addressed to Jermany SULLIVAN at the TARGET LOCATION. Due to the facts that SULLIVAN maintains ownership of the TARGET LOCATION, receives mail at the TARGET LOCATION, and location data relative to the vehicle which SULLIVAN commonly operates provided location data specific to the TARGET LOCATION, I believe items of additional evidentiary value are likely to be stored within the TARGET LOCATION.

**ITEMS TO BE SEIZED**

12. Based upon the aforementioned facts, I believe there is probable cause to believe that the following items (which agents believe to be evidence of violations of Title 21 USC § 846) will be found in a search of the TARGET LOCATION. The items listed below constitute contraband, evidence and/or instruments of the aforementioned offenses.

   a. Controlled substances and drug paraphernalia.

   b. Currency, financial instruments, precious metals, jewelry, and other items of value, which are the fruits of drug trafficking, and indicative of unexplained wealth as it relates to personal income earnings reported to the IRS.

8

c. Firearms and other weapons.

d. Records of drug transactions, including notes, ledgers, receipts, computers and computer files (whether they exist on the hard drive of a computer, or any removable media), photographs, video tapes (or any other digital/electronic media contained on a device such as a digital video recorder), telephone records, calling cards, and correspondence which contain information on current and past associates, and may be used to identify co-conspirators who have not been identified or located.

e. Fictitious identification and other documents which are intended to conceal identity and avoid detection by law enforcement, including fictitious driver licenses, passports, photo identification cards, and documents relating to fraudulently obtained vehicle titles, registrations, and insurance.

f. Currently and/or previously used cellular telephones and electronic communications devices, as well as including the electronic contents of those devices (i.e. electronic telephone directories, photographs, text messages, etc.).

g. Books, records, receipts, notes, ledgers, currency and papers which are evidence of the commission of narcotics and money laundering offenses. The records include tally or ledger sheets; sales and/or purchase invoices; bank, wire transfer and/or other financial institution records; federal and state corporate, partnership, individual and/or other tax and informational returns filed or required to be filed.

13. Based on the aforementioned facts, I respectfully request that a search warrant be issued for the TARGET LOCATION listed in paragraph two of this affidavit.

(SIGNATURES ON FOLLOWING PAGE)

MATTHEW W. MCDONALD
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

Subscribed to and sworn before me this _8th_ day of March, 2019

JACQUELYN D. AUSTIN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF SOUTH CAROLINA

10

## ATTACHMENT A

